**People of the State of Illinois, Plaintiff-Appellee, v. Robert Taylor, Defendant-Appellant.**

**Gen. No 49,939.**

First District, Fourth Division.

May 6, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant, Robert Taylor, was convicted after a bench trial of armed robbery and was sentenced to the penitentiary for not less than three nor more than five years. In this appeal defendant contends that he was not proven guilty beyond a reasonable doubt.

The uncontroverted evidence reveals that on April 20, 1964, three men came to the apartment of the complaining witness, Almore Freeman, and told him that they had come for a record player which belonged to Moscow Dowdy. Having gained entrance to the apartment the men proceeded to rob Freeman of $800 at knifepoint. Freeman testified that:

> I asked them into my apartment. The record player was rolled behind a chair. When I reached over the chair to get the record player, Dowdy [referring to Eldridge Dowdy] caught me from behind. . . . Eldridge Dowdy was choking me and the other fellow had a knife in my side. He was sitting on my feet [indicating the defendant, Robert Taylor]. It was light in my apartment. The men were there about five minutes I'd say. The defendant was going through my pockets. . . .
>
> This defendant was going in one pocket and the other one was going in the other pocket. They held a knife in my side and he go in the other pocket. . . . Then the men left the apartment and the next time I saw Robert Taylor was at the preliminary hearing. The three men were together, Eldridge Dowdy, and the other fellow, I don't know his name, and the defendant, Robert Taylor.

Freeman identified the defendant as one of the robbers at a preliminary hearing and again during the trial.

Detective Leonard Walker testified and stated that he was the investigating officer assigned to the case;

250

that on April 30 he received a tip that a person by the name of Gang Busters was a participant in the subject robbery and was walking west on 47th Street; that he observed two men, the defendant and McClellan Hudson, and mistook Hudson to be the man known as Gang Busters. The witness further testified that:

> I took Robert Taylor and placed him in another part of the cell, through error, and concentrated our investigation on the second man, McClellan Hudson. Early in the morning at the 48th Street station we had a show up with five men and the complainant, Mr. Freeman, was brought to the station. He viewed the five men, he did not identify anyone. At this time, the defendant, Robert Taylor, was in his cell.
>
> . . . . . .
>
> I released Robert Taylor before he'd ever been viewed by the complainant. I also released McClellan Hudson.

Walker testified that he later arrested Eldridge Dowdy and Anthony Heager and that:

> After these two men were arrested, a showup was conducted on May 3 and in the lineup were Anthony Heager, Eldridge Dowdy and Eldridge's brother, Moscow Dowdy. Mr. Freeman . . . was brought in to view these people that we had in custody. At this time Robert Taylor had been released. About an hour, an hour and a half after this lineup containing Eldridge Dowdy and Anthony Heager, Robert Taylor was arrested. We brought him into the area and made out the papers and then shipped him on to the second district. The next day we went to court to a preliminary hearing. . . .
>
> There was no showup conducted between the time of arrest of Robert Taylor and before going to court in which Robert Taylor was involved. The first time

251

we confronted Robert Taylor with the complainant, Mr. Freeman, was in court on the next day, after he was arrested for the second time.

McClellan Hudson testified for the defendant and stated that the first lineup was held at 9:00 p. m., not in the morning; that the defendant was also in the lineup but the complaining witness failed to identify anyone; and that he knew the defendant as "Gang Busters."

Defendant testified in his own behalf, denied participation in the robbery and corroborated the testimony of Hudson with regard to the lineup.

Detective Walker testified in rebuttal and stated that he was mistaken on direct examination with regard to the time of the lineup and agreed that it was held at 9:00 p. m.; and that he thought Hudson was the man called Gang Busters because:

> [T]he informer I had was such a good informer, I relied on his ability. Now, he told me that the man I wanted was Gang Busters, that he was around the corner; and, when he [the informer] walked past him and took off his hat, he took his hat off in front of Mr. Hudson when he meant to take off his hat in front of Mr. Taylor. Therefore, I concentrated all my efforts to Mr. Hudson, thinking he was Gang Busters.

Defendant contends that he was not proven guilty beyond a reasonable doubt and points out that Detective Walker was mistaken in his testimony on direct examination as to the time of the lineup in which McClellan Hudson was placed. From this defendant argues that the testimony of Walker that defendant was not placed in the lineup with McClellan Hudson, which is contrary to the testimony of Hudson and the defendant, should not be believed; that the court should have believed that the complaining witness could not identify

252

defendant from that lineup; and that therefore the identification of the defendant by Freeman in open court was not sufficiently positive. In People v. Mack, 25 Ill2d 416, 185 NE2d 154, the court stated at pages 421, 422 that:

> We have repeatedly held that where a case is tried without a jury the determination of the credibility of the witnesses and the weight to be given their testimony is for the trial judge, and this court will not substitute its judgment on such matters for that of the trial judge, who saw and heard the witnesses.

In the instant case the trial judge saw and heard the witnesses testify with regard to the lineup in question. We will not substitute our judgment for that of the trial judge.

■■ Defendant also argues that even if, as the State asserts, he was first confronted with the complaining witness in open court at the preliminary hearing and identified at that time while standing with the two other defendants, the circumstances were such so as to preclude an impartial, positive identification. The manner in which an identification is made goes only to the weight to be given to the identification by the trier of fact. People v. Boney, 28 Ill2d 505, 192 NE2d 920; People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599. We would point out that the defendant was also identified by the complaining witness during the trial.

After a careful examination of the record we are of the opinion that the evidence warranted the trier of fact in finding the defendant guilty beyond a reasonable doubt. The decision of the trial court is affirmed.

Affirmed.

ENGLISH and McCORMICK, JJ., concur.