THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD CHARLES, Defendant-Appellant.

Third District   No. 75-333

Opinion filed March 16, 1977.

486

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Robert H. Rennick, Sr., State's Attorney, of Toulon (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

After a jury trial in the Circuit Court of Stark County, defendant, Richard Charles, was convicted of armed robbery and sentenced to a term of imprisonment of not less than 5 nor more than 15 years in the Department of Corrections.

At about 8 or 8:30 p.m. on November 4, 1974, Herbert Collister and his housekeeper Ida Bayer were confronted by two men at gunpoint in the garage behind the Collister house. After offering some resistance Collister was beaten and a wallet stolen from him which contained $1,924. Although the garage was illuminated only with a 50-watt light bulb, both Collister and Bayer were able to recognize and identify Richard Charles as one of the robbers from several prior meetings with Charles involving business transactions, one as recently as a week before the robbery, which recognition caused Charles to remove his stocking mask. Ida Bayer testified that in addition to beating Collister and firing a shot into the door as she pushed him away, the defendant threatened her with a maul he held with both hands. A gun similar to the snub-nose nickle-plated revolver described by the two victims was discovered in a cornfield near the Collister home by a neighbor Allan Ratcliff. Another witness, Steve Chesser, testified to seeing two men standing in a ditch near the Collister and Ratcliff homes at about 8 or 9 p.m. on the night of the robbery. Chesser testified that the two men climbed the fence and ran into a cornfield. Bayer testified that she heard no vehicle as the two men fled. Both Collister and Bayer positively identified defendant Richard Charles as the armed robber at trial.

Defendant attempted to refute the evidence implicating him by establishing the alibi that he was in Galesburg with his mother and father at the time of the offense. His mother and father both substantiated the alibi. He also demonstrated to the jury that he was physically unable to grip anything, like a maul, in his right hand. The only defense was repeated attempts to discredit his identification by Collister and Bayer and to show conflicts as to the time of the robbery as reported by the occurrence witnesses and as recorded by the Stark County sheriff in his own report and a conflicting radio log.

On appeal defendant raises three issues: (1) Whether the trial court abused its discretion by excepting the Stark County sheriff from the motion to exclude witnesses; (2) whether the trial court abused its discretion by denying defendant a new trial when it learned that Sheriff Dison had lunched at the same restaurant as the jury during their deliberations; and (3) whether the guilty verdict was the product of a confused jury because the trial court refused to entertain the jury's request for an explanation of a portion of the armed robbery instruction.

■■ Before the first witness testified defendant moved that all witnesses be excluded from the courtroom. The court granted the motion but allowed the State's Attorney the choice of one person to sit with him at the table. Sheriff Dison was the State's Attorney's choice. The defendant objected to the sheriff remaining because he was named as a prospective witness. The question of the propriety of a police officer and prospective witness being excepted from a witness exclusion order has been raised many times. The reason for an order excluding prospective witnesses from the courtroom is to prevent them from hearing one another's testimony and thereby coordinate their own testimony to avoid contradicting one another. Several cases arising out of the more populous regions of our State adhere to the practice of allowing the investigating officer to be exempt from an exclusionary order and to remain with the State's Attorney. (*People v. Mack* (1962), 25 Ill. 2d 416, 185 N.E.2d 154; *People v. Ford* (1967), 89 Ill. App. 2d 69, 233 N.E.2d 51; *People v. Townsend* (1957), 11 Ill. 2d 30, 141 N.E.2d 729.) The reason for this exception is the need of the State's Attorney, with a case overload, to have the assistance of the arresting officer at his side throughout the trial. Although the better rule would be to place the burden on the State's Attorney to show a need for the exemption of an arresting officer and witness from the exclusion order (see *People v. Hartness* (1977), 45 Ill. App. 3d 129, 358 N.E.2d 954 (special concurring opinion)), the trial court has broad discretionary authority to exempt a particular witness from an exclusion order. (*People v. Mack* (1962), 25 Ill. 2d 416, 185 N.E.2d 154.) In the instant case the defendant's counsel initially objected to the trial court's allowing Sheriff Dison to remain in the courtroom, but stated after

argument on the matter, "Now I am educated. The police officer [Sheriff Dison] may stay." Although such language may not constitute a waiver of the matter for purposes of appeal it is clearly evidence of a withdrawal of the defendant's initial objection. Not only did defendant concede the propriety of Sheriff Dison remaining in the courtroom but his post-trial motion failed to allege this as error. A failure to object at trial or to preserve an alleged error in the written post-trial motion waives consideration of that issue on appeal. (*People v. Hartness* (1977), 45 Ill. App. 3d 129, 358 N.E.2d 954; *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.) From an examination of the record we cannot discern any prejudice resulting to defendant from allowing Sheriff Dison to sit at the prosecutor's table.

■■ Defendant also contends that the trial court should have declared a mistrial because Sheriff Dison lunched at the same restaurant as the jury. Sheriff Dison had not been sworn in as a bailiff and did in fact sit several tables away from the jury when they interrupted their deliberations for a lunch break. The sheriff readily admitted eating in the restaurant but testified that he had not spoken to any of the jury concerning the case. We agree with the trial court that this occurrence was unfortunate. Nevertheless defense counsel was aware of the occurrence before the jury returned its verdict and did nothing to complain about it until his post-trial motion. We are convinced that no prejudice resulted from this understandably regrettable small town coincidence of Sheriff Dison eating lunch at the same restaurant and at the same time as the jury. Where defendant has shown no prejudice it was not an abuse of discretion for the trial court to deny defendant a new trial. (*People v. Peters* (1975), 33 Ill. App. 3d 284, 337 N.E.2d 716; *People v. Kelly* (1975), 24 Ill. App. 3d 1018, 322 N.E.2d 527.) In the absence of such a showing we reject defendant's contention.

■■ Defendant's final claim of error is the trial judge's refusal to further instruct the jury when, during deliberations, they requested an explanation of a portion of the armed robbery instruction. The jury indicated that they had questions for the court. Counsel for both the State and the defendant were present when the jury came in and the following took place:

"The Court: Are you the Foreman, Mr. Plumber?

The Foreman: Yes I am, your Honor. We have a question here we'd like to have explained as to what the law interprets, being the first article here that the Defendant took the money from the person or in the presence of Herb Collister. Does this refer to the fact or would you explain this as the law sees it?

The Court: I cannot explain it any further. You merely apply it as

you see fit. Supposed to be common language that you understand and can apply. Anything else?

The Foreman: Then this is what we are to decide upon?

The Court: Yes, sir.

The Foreman: With no other explanations?

The Court: No, sir.

(Jury returned to jury room at 3:00 P.M. to continue deliberations)."

The record does not support defendant's contention that the trial judge was not aware of the existence of his discretion to answer the jury's question in a proper case. (*People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) The question of whether the trial court can or must entertain a jury's request for additional instructions has caused considerable difficulty in Illinois courts. Defendant argues that because of the trial court's refusal the verdict of the jury can only be viewed as a product of confusion and must be reversed, citing *People v. Harmon* (1968), 104 Ill. App. 2d 294, 244 N.E.2d 358; *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622; *People v. Land* (1975), 34 Ill. App. 3d 548, 340 N.E.2d 44. We disagree. The court gave Illinois Pattern Jury Instruction, Criminal, No. 14.02 (1968), which sets out propositions the State must prove to obtain a guilty verdict. The jury questioned the first such proposition which provided, "First: That the defendant took money from the person or presence of Herbert Collister." We view the question as a request for an opinion on the law by the judge. We believe any more specific answer or explanation of the trial judge would have caused the judge to express an opinion and essentially would probably have directed a verdict of guilty. The instructions were clear and in common language which the jury could understand. The trial court properly exercised its discretion by not giving additional instructions under the circumstances of this case.

It appears the evidence of guilt was overwhelming. For the reasons stated the jury's verdict and the judgment of the Circuit Court of Stark County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STENGEL, J., concur.