THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES M. TACKETT, Defendant-Appellant.

Fifth District    No. 79-632

Opinion filed October 10, 1980.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, and Myron A. Hanna, law student, for appellant.

Walden E. Morris, State's Attorney, of Harrisburg (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

The defendant, James M. Tackett, was charged with attempted rape and with burglary with the intent to rape, in violation of sections 8—4(a) and 19—1(a) of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4(a) and 19—1(a)), respectively. He was found not guilty of the attempt and guilty of burglary in a bench trial in the circuit court of Saline County. He appeals his conviction on the sole ground that the requisite intent to commit rape was not shown beyond a reasonable doubt at trial. A review of the evidence is essential to a resolution of this issue.

The complaining witness, Mrs. Jamie Parks, stated that on March 10, 1979, she was asleep on the couch in the living room of her residence wearing a man's long-sleeve shirt and underpants. The front door to the house was locked, but the rear door was not. The rear door was separated from the living room by a utility room, and no door, curtain, or other partition separated these two rooms. Although contradictory testimony was offered, there is evidence in the record that the couch was at least partially visible from one side of the rear doorway.

Shortly after 9 p.m., Mrs. Parks was awakened when a coat, which she later recognized as her husband's, was thrown over her head. She was seized by the arms and wrestled to the floor by an individual whom she at

first believed to be her husband. She requested him to stop. However, after she had been forced from the couch and after the coat had fallen from her head, she realized that her assailant was a young man not her husband. He continued to hold her and also placed his hand over her mouth. He attempted to unbutton Mrs. Parks' shirt but did not succeed. The attacker did not seek to remove her underpants, nor did he speak to her before or during the scuffle. In her defense, Mrs. Parks scratched the hands of the stranger.

The Parks children were asleep in other rooms of the house, and after several minutes they began to cry. The young intruder, apparently disturbed by their crying, left the Parks' home through the back door. Mrs. Parks telephoned the Harrisburg police, who arrived several minutes later. She described the individual who had assaulted her as being a white male wearing a green nylon parka with a fur-lined hood and blue jeans. One officer searched the area for a man fitting that description. He recalled an incident several weeks in the past concerning a prowler at the Parks house and drove to the Bowen Children's Center, where the suspected prowler lived. The officer arrived in time to meet the defendant, dressed according to the description given by Mrs. Parks, walking toward the Bowen Center from the general direction of the Parks residence. The defendant appeared to the officer to be out of breath, and he had recent cuts on his hands. After discussions with the defendant and with Bowen Center staff, the officers involved took him into custody.

In order to satisfy the requirements of section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 19—1(a)), it must be proved beyond a reasonable doubt that the defendant entered a building "with the intent to commit therein a felony." The defendant urges that no such intent was shown because it was not established that at the time he entered the dwelling he intended to have intercourse with Mrs. Parks. He bases his argument on the fact that he attempted only to unbutton her shirt, and second, that he could not have known that a woman was in the house when he entered because, according to the testimony of Harrisburg Police Officer McConnell, the couch was not visible from the rear door. It is urged that these facts are not inconsistent with a reasonable hypothesis of the defendant's innocence, namely that although defendant's conduct and the character of the assault may reflect an intent by defendant to touch the upper part of Mrs. Parks' body, at most they evince an intent on his part to do something less than rape her.

■■ The defendant correctly notes that the law requires the State to negate all reasonable possibilities of his innocence (*People v. Meeks* (1978), 59 Ill. App. 3d 521, 375 N.E.2d 1001; *People v. Delp* (1980), 85 Ill. App. 3d 463, 406 N.E.2d 903). However, this proposition merely confirms the need for proof beyond a reasonable doubt, as the State contends in its

brief. As stated by the court in *People v. King* (1964), 50 Ill. App. 2d 421, 427, 200 N.E.2d 411, 414, "this court need not search for potential explanations compatible with defendant's innocence in order to raise a reasonable doubt of his guilt."

■■ As the trial court found, the fact that the defendant did not perform a substantial step toward the completion of the rape does not preclude a finding by the court that he intended to commit rape. The activity needed to indicate an intent to rape is less than that required to prove the completion of a substantial step toward the commission of rape necessary to establish an attempt rape. *Cf. People v. Clerk* (1979), 68 Ill. App. 3d 1021, 386 N.E.2d 630.

■■ The State's evidence, uncontradicted by any testimony offered by the defendant, shows that Mrs. Parks was attacked by the defendant while she slept on a couch in her home at night. Evidence was introduced, although contradicted, to justify the finding of the trial court that the defendant could see Mrs. Parks from outside the back door of the residence. Further, the testimony of Mrs. Parks indicated that the defendant entered her home from the back door and took her husband's coat, which was in the utility room. It is not manifestly against the weight of the evidence for the court to conclude, therefore, that the defendant had formed the intent to do whatever he intended to do by the time he entered the building.

The defendant urges, however, that regardless of this fact, the attack was not of such a character as to suggest an intent to commit rape. It is claimed that the defendant's acts were far more equivocal than the assaults in *People v. Hornbuckle* (1972), 7 Ill. App. 3d 328, 287 N.E.2d 294, and *People v. Almond* (1975), 31 Ill. App. 3d 374, 333 N.E.2d 236, both of which sustained convictions for attempted rape. In *Hornbuckle*, the defendant accosted the victim in a public park during the day where he forced her to the ground, tore her halter top, told her to "let him see what she had," and attempted, unsuccessfully, to remove her shorts before terminating the attack. The defendant in *Almond* assaulted the victim at night by pulling her from a sidewalk in the direction of an alley. He strangled her, threatened to kill her, and apparently unfastened her pants, but he did not tell her that he intended to rape her. Both *Hornbuckle* and *Almond* involved attempt rape by the performance of substantial steps taken toward rape, rather than the commission of a burglary with the intent to commit rape, as in the case at bar.

It is urged by defendant that the acts he is alleged to have committed in the instant case were more similar to those of the defendant in *People v. Matthews* (1976), 44 Ill. App. 3d 342, 358 N.E.2d 84, in which a conviction for burglary with intent to rape was overturned for insufficient proof of the proper intent. There, the defendant entered the home of the

victim and stated that he desired to have intercourse with her. The victim fled the house and returned with a neighbor. They discovered the defendant sitting on a couch, naked from the waist down.

The testimony at trial places the instant case somewhere between *Hornbuckle* and *Almond* on one hand, and *Matthews* on the other hand. The defendant said nothing to Mrs. Parks and did not attempt to remove anything but her shirt, in spite of the fact that she was dressed only in a shirt and underpants. We conclude, however, that the following facts established the defendant's intent to rape regardless of whether they may be insufficient to constitute the performance of a substantial step toward the completion of the offense of rape: (1) the defendant entered the house at night without authority; (2) the victim, Mrs. Parks, was not known to him; (3) he either attempted to conceal his identity or to restrict Mrs. Parks' activities by throwing her husband's coat over her head; (4) he seized her by the arms and struggled with her; (5) he forced her to the floor; and (6) he attempted to remove her shirt.

■■ Defendant's conduct goes beyond *Matthews* in that he used force against the victim. Further, defendant's attack was sexual in nature; therefore, it cannot be said that the trial court erred in finding that the defendant entered the home of Mrs. Parks intending to have intercourse with her against her will.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

HARRISON and SPOMER, JJ., concur.